IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

STACY SEYMOUR o/b/o R.M.F.,  )
            )
    Plaintiff,    )
            )
  v.         )  CIVIL ACTION NO. 1:08CV737-SRW
            )      (WO)
MICHAEL J. ASTRUE, Commissioner )
of Social Security,     )
            )
    Defendant.   )

## MEMORANDUM OF OPINION

Stacy Seymour o/b/o R.M.F.[1] brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her niece's application for Supplemental Security Income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

On April 19, 2006 (protective filing date), plaintiff filed an application for Supplemental Security Income (SSI), alleging disability since July 9, 2002 – her date of birth – on the basis of hyperactivity and a learning disability. (R. 69-73). On January 31, 2008, after the claim was denied at the initial administrative levels, an ALJ conducted an

---

[1] The court refers to R.M.F. as the "plaintiff" in this memorandum of opinion.

administrative hearing.  The ALJ rendered a decision on March 13, 2008, in which he found that plaintiff was not under a disability as defined in the Social Security Act at any time through the date of the decision. On July 9, 2008, the Appeals Council denied plaintiff's request for review.

### STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  Factual findings that are supported by substantial evidence must be upheld by the court. See Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990)("Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence.").  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's

2

decision must be reversed.  <u>Cornelius</u>, 936 F.2d at 1145-46.

## DISCUSSION

"Federal regulations set forth the process by which the SSA determines if a child is disabled and thereby eligible for disability benefits." <u>Shinn ex rel. Shinn v. Commissioner of Social Sec</u>., 391 F.3d 1276, 1278 (11th Cir. 2004) (citing 42 U.S.C. § 1382c(a)(3)(C)(I) and 20 C.F.R. § 416.906). "The process begins with the ALJ determining whether the child is 'doing substantial gainful activity,' in which case she is considered 'not disabled' and is ineligible for benefits."  <u>Id</u>. (citing 20 C.F.R. §§ 416.924(a), (b)). In this case, the ALJ determined that plaintiff, a preschooler during the relevant time period, has not engaged in substantial gainful activity.  R. 12.

"The next step is for the ALJ to consider the child's 'physical or mental impairment(s)' to determine if she has 'an impairment or combination of impairments that is severe.'" <u>Id</u>. (citing 42 U.S.C. §§ 416.924(a), (c)).  The ALJ found that plaintiff has the severe impairment of attention deficit hyperactivity disorder (ADHD).  R. 12.

"For an applicant with a severe impairment, the ALJ next assesses whether the impairment 'causes marked and severe functional limitations' for the child." <u>Shinn</u>, 391 F.3d at 1278 (citing 20 C.F.R. §§ 416.911(b), 416.924(d).)  This determination is made according to objective criteria set forth in the Code of Federal Regulations (C.F.R.).  As the Eleventh Circuit has explained,

> [t]he C.F.R. contains a Listing of Impairments ["the Listings", found at 20 C.F.R. § 404 app.] specifying almost every sort of medical problem ("impairment") from which a person can suffer, sorted into general categories.

3

See id. § 416.925(a). For each impairment, the Listings discuss various limitations on a person's abilities that impairment may impose. Limitations appearing in these listings are considered "marked and severe." Id. ("The Listing of Impairments describes ... impairments for a child that cause[ ] marked and severe functional limitations.").

A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations "meet[ ], medically equal[ ], or functionally equal[ ] the [L]istings." Id. § 416.911(b)(1); see also §§ 416.902, 416.924(a). A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations "are at least of equal medical significance to those of a listed impairment." Id. § 416.926(a)(2).

Id. at 1278-79.  In this case, the ALJ found that plaintiff did not have any impairment or

combination of impairments which met or medically equaled a listed impairment.  R. 13.

"Finally, even if the limitations resulting from a child's particular impairment are not

comparable to those specified in the Listings, the ALJ can still conclude that those limitations

are 'functionally equivalent' to those in the Listings.  In making this determination, the ALJ

assesses the degree to which the child's limitations interfere with the child's normal life

activities. The C.F.R. specifies six major domains of life:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

 (v) Caring for [one]self; and

(vi) Health and physical well-being."

Shinn, 391 F.3d at 1279 (citing 20 C.F.R. § 416.926a(b)(1)). "The C.F.R. contains various

4

'benchmarks' that children should have achieved by certain ages in each of these life domains." Id. (citing 20 C.F.R. §§ 416.926a(g)-(l)). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).[2] The ALJ determined that R.M.F has no limitation in the domain of health and physical well-being, and "less than marked" limitations in the remaining five domains. (R. 18-24). Thus, the ALJ concluded that the plaintiff is not disabled. (R. 24).

Plaintiff argues that the evidence demonstrates that she has marked or extreme limitations in four of the domains: acquiring and using information, attending and completing tasks, interacting and relating to others, and caring for herself. She argues that the ALJ erred by finding to the contrary and that his findings in this regard are not supported by substantial evidence. Plaintiff argues, in part, that the ALJ should not have given great weight to the assessment of the state agency psychologist because the psychologist did not examine the claimant and because he rendered his opinion "over a year and a half before the hearing and without considering the Claimant's recent report cards or considering the evidence submitted." (Plaintiff's brief, p. 6).

---

[2] " 'A 'marked' limitation is defined as a limitation that 'interferes seriously with [the] ability to independently initiate, sustain, or complete activities,' and is 'more than moderate.'" Henry v. Barnhart, 156 Fed.Appx. 171, 174 (11th Cir. 2005) (unpublished) (citing 20 C.F.R § 416.926a(e)(2)(I)). "An 'extreme' limitation is reserved for the 'worst limitations' and is defined as a limitation that 'interferes very seriously with [the] ability to independently initiate, sustain, or complete activities,' but 'does not necessarily mean a total lack or loss of ability to function.'" Id. (citing 20 C.F.R. § 416.926a(e)(3)(I)).

The Commissioner responds that plaintiff's argument relies largely on testimony from her custodial aunt and a form completed by her preschool teacher regarding plaintiff's symptoms, and that the ALJ properly found these subjective complaints were "not fully credible." The Commissioner further argues that the ALJ's findings are supported by substantial evidence, including treatment notes from plaintiff's treating physicians, plaintiff's report card, the statements of plaintiff's aunt and day care teacher (to the extent they were found credible) and the state agency psychologist's opinion.

The medical record includes treatment notes from plaintiff's pediatrician for the period from plaintiff's birth through February 2008, consisting primarily of well-baby and well-child checks and ordinary childhood complaints (ear infections, diarrhea, cold symptoms). On October 7, 2004, when plaintiff was 27 months old, her mother complained of behavior problems. On December 5, 2005, plaintiff's aunt – who was then seeking court-ordered custody[3] – complained of hyperactivity and behavior problems at daycare. The pediatrician referred plaintiff for psychiatric evaluation. (Exhibit 1F, 4F, 8F, 9F).[4]

On May 5, 2006, plaintiff's preschool teacher, Nettie Brinson, completed a function report.[5] Brinson indicated that: plaintiff did not comprehend what she was told and slurred

---

[3] Plaintiff's aunt had temporary custody of the plaintiff beginning in September 2005 due to "child neglect." (R. 167).

[4] While the pediatrician's notes include references to plaintiff's behavioral problems and ADHD, plaintiff was treated by a psychiatrist – Dr. Tessema of Southeast Psychiatric Services – from December 2005 through April 2008 for these problems. Accordingly, the court does not discuss the pediatrician's notes in detail.

[5] Plaintiff did not attend daycare while she remained in her mother's care. (See Exhibit 1F).

her words and her speech could be understood only some of the time; she did not or could not talk about what she was doing, take part in conversations with other children, tell about things or activities which happened in the past,[6] tell made up or familiar short stories, answer questions about a short read-aloud story or TV story, or deliver simple messages; she does not or cannot recite numbers to ten, ask what words mean, know her telephone number, define common words, understand jokes, read capital letters of the alphabet, catch a large ball, print at least some letters, copy her first name, use scissors fairly well, share toys, take turns, play "pretend" with other children, play games like tag or hide-and-seek, or play board games;[7] she does not usually control her bowels and bladder during the day, eat using a fork and spoon by herself, dress herself without help, wash or bathe without help, brush her teeth without help, or put her toys away.  (R. 90-98).  Brinson further stated:

> Rebecca does not pay attention to tv very well maybe 10 minutes and that's if she likes it.  She doesn't listen to reading stories or games at all.  She moves around and doesn't listen.  She messes up games. . . . She constantly screams and has a slight temper.  Her attention span is very low and she is on the go constant.  She can't be still she always has to move.  She is very hyper also.  That is why she is taking medication to calm her.  She is very slow on picking up things.

(R. 97).

Plaintiff's aunt also completed a function report on April 19, 2005, a few weeks

---

[6] Plaintiff did relate to Brinson that "her mama scared [her]."  (R. 93).

[7] Brinson indicated that plaintiff does not interact well with children, and that she will sometimes hit, "maybe bite," and "has kicked" another child.  (R. 96).  She further stated that plaintiff knows her age and a few colors and shapes, but does not show the correct number for her age on her hand and cannot count on her hand.  (R. 94).

before Ms. Brinson did so.  Her function report conflicted with Brinson's in some respects. Plaintiff's aunt noted that: plaintiff's speech can be understood by people who know her well most of the time and by others some of the time; she does talk about what she is doing and takes part in conversations with other children, she does tell about things and activities that happened in the past; she can or does recite numbers up to 10, define common words, understand jokes, catch a large ball, use scissors fairly well, play games like hide-and-seek, eat using a fork and spoon by herself,[8] dress herself without help, wash or bathe without help, and brush her teeth without help.  (R. 82-86).  In other respects, plaintiff's aunt's function assessment was the same as Brinson's.

On June 16, 2006, a non-examining state agency psychologist – after considering the function reports from plaintiff's aunt and daycare teacher, the pediatrician's September 2005 notation of "behavioral problems," and treatment records through April 3, 2006 from Dr. Tessema – concluded that, while plaintiff has a severe impairment, she has no limitation in the domain of health and physical well-being, and "less than marked" limitations in the remaining five domains.  (Exhibit 3F, R. 175-80).

Dr. Tessema began treating plaintiff in December 2005, and treated her through April 2008.  His notes reflect that he diagnosed plaintiff with ADHD and treated her with medication. Dr. Tessema initially treated plaintiff with Focalin and Tenex, with improvement

---

[8]  Plaintiff's aunt noted that she "uses hands some in eating."  (R. 86).

in plaintiff's behavior through May 2006.[9]  In June 2006, noting that plaintiff was "very" fidgety and that her hyperactivity was "severe," Dr. Tessema changed plaintiff's medication. (R. 207-08).  On July 27, 2006, plaintiff's aunt reported that plaintiff was still hyperactive, but that "they can manage her well" in daycare and that she was "doing good in daycare[.]" (R. 206).[10]  In August 2006, plaintiff was reportedly "doing good at school [with] no behavioral problems.  Good sleep & appetite." (R. 205).  In September 2006, plaintiff's aunt reported that she was "[n]ot listening or behaving in the classroom[.]" (R. 204).  However – despite this reported decline in plaintiff's behavior – plaintiff did not return to Southeast Psychiatric Services for over four months, until February 2007, when her aunt reported that daycare "cannot manage her."[11]  In May 2007, three months later, plaintiff's aunt again

---

[9]  In monthly office visits for February, March, April, and May 2005, Dr. Tessema recorded plaintiff's hyperactivity as "moderate."  Dr. Tessema recorded plaintiff's aunt's statements in March that plaintiff was "doing better" and was "[s]till hyperactive but manageable[;]" in April that she was "overall doing good," "occasionally has 'fits' when she doesn't get her way[,]" but was having "[n]o behavior problem at daycare[;]" and in May that she "is a happy girl but very hyperactive" and has "no violent or aggressive behavior" at daycare.  (R. 209-11).

[10]  Two weeks earlier, plaintiff's aunt had reported "hyperactivity, not minding, excessive talking, [and] impulsivity" to plaintiff's pediatrician, who then referred plaintiff for evaluation by Counseling Services of Dothan. (R. 186). Plaintiff went to only three weekly counseling appointments – on July 19, July 26 and August 2, 2006 – and did not show for the next scheduled appointment, leading her counselor to conclude that "[d]ue to the few number of sessions and the failure of the guardian to follow through with recommendations and continued counseling, it would appear that Rebecca's behavior is more a result of adult decisions (the disruption from her birth parents who allegedly have several diagnoses) and parenting techniques of her current caregivers." (R. 218).

[11]  In December 2006, plaintiff's pediatrician, Dr. Barron, noted that plaintiff had "done well" on Metadate, but that she had been "[o]ut of meds 1 month as insurance lapsed."  He noted that her "[p]roblems in school have recurred [without] meds."  Dr. Barron wrote a new prescription for Metadate and dispensed the medication.  (R. 187).

9

reported that daycare "can't handle her[.]"  Dr. Tessema re-started plaintiff on Metadate and Tenex.  (R. 201).

One month later, in June 2007, Dr. Meghani noted that plaintiff's condition had "improved," and that she was "doing good" on her medications.  In early August, Dr. Tessama noted that plaintiff had been without her medications for the past month due to her aunt's reported inability to afford the medication; however, by the end of the month, plaintiff was noted to be doing well on Focalin.  Dr. Tessema noted that she had "shown marked improvement."  He noted that she was hyperactive and fidgety, but that it was "mild to moderate[.]"  (R. 198).  Plaintiff's aunt reported that plaintiff had problems with sitting still and talking too much in September 2007 and that she was "[n]ot following directions, not sitting still and teacher is still complaining" in October 2007.  However, she then noted that she is "doing well" in the house.   (R. 196).  In November 2007, Dr. Tessema wrote, "Doing well at school [without] change of meds[.]  No behavioral problem at home or school.  In office calm.  Has good sleep."  He noted that plaintiff was "calmer."  He continued plaintiff on the same medications. (R. 195).[12]   In January 2008, Dr. Tessema increased plaintiff's dosage of Focalin, after plaintiff's teacher reported that plaintiff was hyperactive and fidgety in the afternoon.  (R. 221).  The following month, plaintiff's aunt reported that plaintiff had

--------

[12]  Plaintiff's kindergarten report card for the first grading period of the 2007-2008 school year reflected satisfactory conduct, but indicated that she needed improvement in respecting the rights, feelings and property of others, and was showing improving in showing respect for adults and following directions.  (R. 113).  On September 13, 2007, plaintiff was disciplined for stealing. (R. 111).  Plaintiff was rated "satisfactory" in all but four of nineteen rated academic skills and received no rating of "U" – unsatisfactory – in any rated academic or social skills.  (R. 113).

received an "N" in conduct, was still talking in the classroom, but "[a]t home does good."
(R. 222).  In March 2008, plaintiff was hyperactive and fidgety, but was "[without] meds[.]"
(R. 223).  On April 17, 2008, the last office visit in the record, Dr. Tessema noted that
plaintiff was "[d]oing wonderful at school and at home[.]"  (R. 224).

As noted previously, plaintiff contends that the ALJ's ratings of plaintiff's level of
impairment in four of the six domains is not supported by substantial evidence.  She relies
primarily on the function reports completed by her aunt and daycare teacher in April and
May 2005, and objects to the ALJ's assignment of "great weight" to the opinion of the state
agency psychologist, Dr. Simpson, because he is "only a consulting physician, who never
observed the Claimant, and reached his conclusion over a year and a half before the hearing
and without considering the Claimant's recent report cards or considering the evidence
submitted."  (Doc. # 15, p. 6; see also id. at pp. 7, 9, 12).  The court notes, however, that Dr.
Simpson's is the *only* expert opinion of record regarding plaintiff's level of limitation in each
of the domains and that he rendered his opinion after considering the function reports and the
then-available medical treatment records.

Social Security Ruling 96-6p provides that "[f]indings of fact made by State agency
medical and psychological consultants and other program physicians and psychologists
regarding the nature and severity of an individual's impairment(s) must be treated as expert
opinion evidence of non-examining sources at the administrative law judge and Appeals
Council levels of administrative review."  The Ruling indicates that the medical opinions of
such consultants must be considered, and states that "State agency medical and psychological

consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." The opinions of non-examining medical sources, "when contrary to those of examining [sources], are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987). However, the ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991). In this case, because Dr. Simpson's expert opinion did not conflict with that of any examining medical source, the ALJ did not err by relying on it.

Additionally, contrary to plaintiff's argument, the school record and medical treatment records which were not available at the time of Dr. Simpson's consideration of the record do not conflict with or otherwise impeach his opinion. As noted previously, plaintiff's school records for the first grading term of kindergarten – the only school reports of record – indicate a single instance of discipline and no ratings of unsatisfactory in any skill area. (See supra n. 12). As the ALJ noted, the medical records reflect that plaintiff "has been prescribed and has taken appropriate medications that have been relatively effective in controlling her symptoms" and she has "demonstrated improved behavior at home and at school." (R. 17). The record amply supports the ALJ's conclusion that "since the date the application was filed, there has not been a period of 12 continuous months when more severe ratings were warranted." (Id.). The ALJ's opinion reflects a thorough consideration of the evidence of record and the regulatory provisions applicable to each of the domains, and his findings are

supported by substantial evidence.

## CONCLUSION

Upon consideration of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law and, accordingly, that it is due to be AFFIRMED.  A separate judgment will be entered.

Done, this 12th day of April, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE